FILED

2023 Dec-06  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRAD NEWMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CASE NO:** |
| **v.** | ) |
| | ) |
| **SHELTON STATE COMMUNITY** | ) **JURY DEMAND** |
| **COLLEGE, ALABAMA COMMUNITY** | ) |
| **COLLEGE SYSTEM, ALABAMA** | ) |
| **COMMUNITY COLLEGE SYSTEM'S** | ) |
| **BOARD OF TRUSTEES – GOVERNOR** | ) |
| **KAY IVEY, J.E.B. SHELL, JOHN MITCHELL,** | ) |
| **VALERIE GRAY, BRITTON LIGHTSEY,** | ) |
| **GOODRICH ROGERS, RON HOUSTON,** | ) |
| **LLEVELYN RHONE, TIM MCCARTNEY, AND** | ) |
| **DR. YEVETE RICHARDSON, and JIMMY H.** | ) |
| **BAKER IN HIS INDIVIDUAL AND OFFICIAL** | ) |
| **CAPACITY AS CHANCELLOR OF THE** | ) |
| **ALABAMA COMMUNITY COLLEGE SYSTEM,** | ) |
| | ) |
| **Defendants.** | ) |

_____

## COMPLAINT
_____

## INTRODUCTION

Plaintiff, Brad Newman ("Plaintiff"), brings this action for legal and equitable relief to address unlawful retaliatory employment practices against Plaintiff by Defendants Shelton State Community College ("Shelton State"), the Alabama Community College System ("ACCS"), and the Alabama Community College

System Board of Trustees, Governor Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, and Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama community College System ("ACCS Trustees"). Plaintiff's retaliation claims arise under the opposition clause of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983, the Fourteenth Amendment, and seeks lost wages, compensatory damages, injunctive relief, equitable relief, reinstatement, attorneys' fees, costs, and all other available relief and remedies.  Plaintiff also brings state law claims of breach of contract against Defendants Shelton State Community College and the Alabama Community College System Board of Directors. Plaintiff brings claims against Defendant Jimmy H. Baker, in his official capacity as Chancellor of the Alabama Community College System and in his individual capacity, under 42 U.S.C. § 1981 by and through 42 U.S.C. § 1983, and Plaintiff seeks injunctive relief, equitable relief, compensatory damages, reinstatement, lost wages, punitive damages, attorneys' fees, costs, and all other available remedies and relief.

## JURISDICTION AND VENUE

1.      This Complaint seeks legal and equitable relief to redress Defendants' unlawful violations of Plaintiff's rights secured by the following:

2

a. Title VII of the Civil Rights Act of 1964, as amended;

b. The Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended;

c. The Fourteenth Amendment to the United States Constitution;

d. 42 U.S.C. § 1983; and

e. The laws of the State of Alabama.

2. Jurisdiction is proper pursuant to the following:

a. 28 U.S.C. §§ 1331, 1343(a)(3), 1341(a)(4); 42 U.S.C. § 2000e-5, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

3. Venue is proper and lies within the Northern District of Alabama under 28 U.S.C. § 1391.

## **PARTIES**

4. Plaintiff Brad Newman (hereinafter "Plaintiff") is over the age of 19 and a citizen of the United States and a resident of the State of Alabama.

5. Defendant Shelton State Community College ("Shelton State") is a public college in Tuscaloosa, Alabama and is part of and under the control of the Alabama Community College System. At all times relevant hereto, Defendant Shelton State has been an employer within the meaning of 42 U.S.C. § 2000e(a), has maintained and operated a business in Alabama, and has been engaged in an industry affecting commerce, has fifteen (15) or more employees, is considered an employer

for Title VII purposes.

6.    Defendant Alabama Community College System ("ACCS") is a public college system of twenty-four community and technical colleges in the State of Alabama governed by its Board of Trustees. At all times relevant hereto, Defendant ACCS has been an employer within the meaning of 42 U.S.C. § 2000e(a), has maintained and operated a business in Alabama, and has been engaged in an industry affecting commerce, has fifteen (15) or more employees, is considered an employer for Title VII purposes. Defendant ACCS Board of Trustees, Governor Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, and Dr. Yvette Richardson, are sued in their official capacity as Trustees of the Alabama Community College System and as such have the authority and are responsible for the supervision, administration, operation, implementation of policies, naming financing, hiring, retention, contracting, construction, and equipping of Defendant Shelton State. The Trustees as named herein are persons for purposes of 42. U.S.C. § 1983, and an employer within the meaning of Title VII and 42 U.S.C. § 1981, as amended.

7.    Chancellor Jimmy H. Baker is a resident of the State of Alabama and was at all times relevant hereto the Chancellor for the ACCS in his official capacity.

4

## ADMINISTRATIVE PROCEDURES

8.      Plaintiff hereby adopts and re-alleges paragraphs one (1) through seven (7) herein above as if fully set forth herein.

9.      Plaintiff brings this action for the unlawful employment practices and acts of intentional retaliation that occurred as well as his state law claims.

10.     This action seeks to redress unlawful employment practices and violations of the laws of the State of Alabama, resulting from the acts of Defendants, their agents, servants, and employees committed with respect to Plaintiff's employment.

11.     On July 18, 2022, within 180 days of the last discriminatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Exhibit A)

12.     Plaintiff's Notice of Right to Sue was mailed by the EEOC to the Plaintiff on September 6, 2023, and Plaintiff filed suit within ninety (90) days of receipt of her Notice of Right to Sue. (Exhibit B).

13.     All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## FACTUAL ALLEGATIONS

14.   Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirteen (13) herein above as if fully set forth herein.

15.   Plaintiff, Brad Newman, is a male and a resident of the State of Alabama.

16.   On or about March 18, 2021, the Alabama Community College System's ("ACCS") Board of Trustees hired Plaintiff to be the President of Shelton State Community College.

17.   The Board of Trustees for the ACCS, acting by and through its Chancellor, Jimmy H. Baker, ("Chancellor"), as the Chief Executive Officer of the ACCS, and Shelton State entered into an Executive Officer Contract of Employment agreement ("Contract"), with Plaintiff hiring Plaintiff as the President of Shelton State.

18.   As a term and condition of the Contract, ACCS agreed to employ Plaintiff as the President of Shelton State for an initial term  beginning March 24, 2021, through March 24, 2023.

19.   The Contract was executed by Plaintiff and Jimmy H. Baker, Chancellor, on behalf of the ACCS.

20.   Pursuant to the terms and conditions of the Contract, the Chancellor was required to conduct an initial evaluation of Plaintiff's performance as President no later than six months following Plaintiff's initial employment and thereafter conduct

6

an evaluation no later than May 31st of each year.

21.     Shelton State is a member college in the ACCS, and under the control of the ACCS Board of Trustees.

22.     The ACCS Board of Trustees has the authority to make and enforce rules and regulations for the governance of each community and technical college that is a member governed by the ACCS.

23.     The ACCS Board of Trustees has the authority to prescribe qualifications for faculty, establishing and maintaining an annual salary schedule for each community and technical college employee classification.

24.     The Chancellor has the authority to act and make decisions concerning the management and operations of the community and technical colleges and the ACCS Board of Trustees has delegated this authority to the Chancellor such that the Chancellor's exercise of these powers is subject to the approval of the ACCS Board of Trustees.

25.     Prior to Plaintiff being hired as the President of Shelton State, the college hired fifteen (15) prior presidents in thirteen (13) years, and all are Caucasian.

26.     Shelton State has two distinct campuses: (1) the newer main campus which is called Martin Campus located south of Tuscaloosa; and (2) the CA Fred Campus located in a predominately African American area in the western part of Tuscaloosa.

27.    During Plaintiff's employment as President of Shelton State, the two campuses were segregated with a majority of Caucasian students attending classes at the Martin Campus and majority African American students attending classes at the CA Fred Campus.

28.    When Plaintiff was hired the ACCS tasked Plaintiff with changing the culture at Shelton State.

29.    Plaintiff conducted as assessment of the culture at Shelton State and saw areas where there were possible racial bias and issues.

30.    When Plaintiff began his employment as President of Shelton State, the leadership team consisted of six Caucasians and two African Americans:

| Ronald Range | Dean of CA Fred Campus | African American |
|---|---|---|
| Rodney Landrum | CFO Shelton State | African American |
| Joey Jones | Dean of Instruction | Caucasian |
| Amanda Harbison | Dean of Students | Caucasian |
| Jason Moore | Dean of Workforce Development | Caucasian |
| Kevin Davis | Human Resources Director | Caucasian |
| Channing Marlowe | Special Assistant to the President | Caucasian |
| Julie Frizzell | Special Assistant to the Chancellor | Caucasian |

31.    Plaintiff observed issues that raised concerns of racial bias including but

not limited to, (1) differences in compensation for African American employees in the Athletic Department compared to Caucasian employees; (2) Caucasian Chancellor Jimmy Baker's unjustified dislike for Rodney Landrum, the only African American member of the leadership team at the martin Campus; (3) and the disparate treatment of the CA Fred Campus compared to the Martin Campus with regard to the physical condition of each Campus and maintenance and repairs.

32.    Plaintiff reported the racial discriminatory pay issue and immediately worked to rectify the racial inequity regarding the pay African American's received in the Athletic Department and restructured the Athletic Department's organizational structure and individual pay scales.

33.    Plaintiff determined that the racial discrepancy in pay was known by the ACCS, and its legal counsel, and no action was taken to correct this racial inequity prior to the actions taken by Plaintiff.

34.    After Plaintiff restructured the pay in the Athletic Department, Coach Joe Eatmon, the only African American coach, was moved to the higher pay scale comparable to the Caucasian coaches.

35.    Plaintiff also discovered that the female Athletic Director had been the Athletic Director for several years, but Shelton State never properly placed her on the administrative salary pay scale and she was being paid on a lower tier pay scale than comparable males.

36.     Plaintiff reported this gender discriminatory pay issue and proposed correcting the female Athletic Director's pay to the correct nondiscriminatory pay scale.

37.     Plaintiff worked to address the disparate and discriminatory treatment of the CA Fred Campus that Shelton State and the ACCS let fall into a state of disrepair.

38.     Shelton State and the ACCS kept the Martin Campus well maintained.

39.     Plaintiff began efforts to repair the CA Fred Campus to equal that of the Martin Campus, but the Chancellor refused to continue to work with Plaintiff and support these efforts.

40.     Under Plaintiff's leadership as President, the CA Fred Campus prioritized outreach for education and employment training opportunities for juvenile and adult populations previously and currently incarcerated, as well as individuals awaiting trial, the majority of whom are African American.

41.     As President of Shelton State, Plaintiff engaged in protected activity and reported concerns about racial and other discriminatory issues to the Caucasian Chancellor and the Caucasian Vice Chancellor and Chief of Staff, Dr. Susan Price.

42.     The Chancellor and Chief of Staff did not address Plaintiff's reported concerns about racial issues and failed to offer any assistance to address the racial discrimination.

43. Plaintiff again engaged in protected activity when he complained again to the Chancellor and the Chief of Staff after verifying racial biases and incidents of racial discrimination at Shelton State.

44. Plaintiff reported specific instances of racial bias and discrimination to the Chancellor and Chief of Staff.

45. Plaintiff also reported incidents of racial issues to Roger Bates, Caucasian legal counsel for the ACCS and Shelton State.

46. The Chancellor, Chief of Staff and legal counsel failed to address Plaintiff's complaints and reports of racial bias and discrimination and no assistance was offered to address the discrimination.

47. During a meeting with Shelton State leadership, Ronald Range, African American Dean of CA Fred Campus, also reported that, "Systemic racism exists on the Martin Campus."

48. After Dean Range complained about systemic racism, Plaintiff asked the Shelton State leadership team, majority Caucasian, "What are we going to do now to address this comment?" and the Caucasian leadership did not respond and attempted to move on to the next topic.

49. Dean Range also complained about the Caucasian leadership refusing to permit certain classes to be taught at the CA Fred Campus which prevented mostly African American students from being able to take these classes, and that Shelton

State counselors were discouraging Caucasian students from taking classes at the CA Fred Campus suggesting that this campus had various issues and might be unsafe, further segregating the two campuses.

50.    Despite Plaintiff's repeated requests, nothing was done to address Dean Range's racial complaints.

51.    In late 2021, Plaintiff scheduled diversity training for the Shelton State extended leadership team to help address and better understand the racial issues at Shelton State.

52.    The diversity training was to be held in January 2022.

53.    The day before the training was to begin, the Chancellor summoned Plaintiff to his office in Montgomery, Alabama without any explanation.

54.    When Plaintiff met with the Chancellor, he was visibly upset and informed Plaintiff that diversity training was not necessary and stated, "I can't imagine why this would be a priority."

55.    The Chancellor informed Plaintiff that he expected Plaintiff to cancel the diversity training, and as a result Plaintiff cancelled the diversity training before leaving Montgomery to return to Tuscaloosa.

56.    On or about February 8, 2022, Roger Bates, Caucasian attorney for Shelton State, met with Plaintiff and expressed his lack of belief and lack of concern regarding Plaintiff's reported racial issues at Shelton State.

12

57. Mr. Bates informed Plaintiff that racial issues did not exist at Shelton State and stated, "You know Brad, if you talk about something enough, even if it does not exist, soon others will begin to believe you. So, stop bringing it up and it will not be an issue."

58. Mr. Bates' comments were a warning to Plaintiff to back off and not complain about discrimination again.

59. Chancellor Baker and the ACCS Board of Trustees condoned and ratified Mr. Bates' retaliatory actions.

60. On or about February 10, 2022, the Chancellor again summoned Plaintiff to his office and he presented Plaintiff with two options: (1) resign, receive three months' pay, and before leaving the meeting sign a full release and non-disclosure agreement releasing any claims Plaintiff may have against Shelton State and restricting Plaintiff from talking about Shelton State; or (2) Plaintiff would be terminated immediately.

61. The Chancellor did not provide any reason for Plaintiff's termination.

62. The Chancellor refused to allow Plaintiff an opportunity to have a lawyer of his choosing, representing his interests, review the release and non-disclosure agreement and instead offered to have an ACCS attorney review the release and agreement for Plaintiff.

63. Plaintiff informed the Chancellor that he could not sign the release and

non-disclosure agreement without having an attorney of his choosing, with no conflict of interest, review the document.

64. The Chancellor then terminated Plaintiff's employment on February 10, 2022, effective immediately.

65. The Chancellor failed to provide Plaintiff sixty days' notice of his termination.

66. ACCS and Shelton State failed to pay Plaintiff the present value of the remaining terms of the Executive Officer Contract of Employment.

67. The ACCS Board of Directors did not vote on Plaintiff's termination prior to the Chancellor terminating Plaintiff's employment on February 10, 2022, effective immediately.

68. Plaintiff was not terminated for cause, or any actions alleged to constitute cause.

69. ACCS, Shelton State and the Chancellor have failed to abide by the lawful terms of the Executive Officer Contract of Employment entered into with Plaintiff.

70. ACCS was aware of Chancellor Baker's illegal, unconstitutional and retaliatory actions towards Plaintiff and others, as well as his illegal, unconstitutional and discriminatory actions towards African American and female employees and despite this knowledge and being aware of Plaintiff's complaints and protected

14

activity, voted to terminate Plaintiff's employment on or about March 21, 2022.

## COUNT ONE

### PLAINTIFF'S TITLE VII AND SECTION 1981/1983 RETALIATION CLAIMS AGAINST DEFENDANT SHELTON STATE

71. Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70) herein above as if fully set forth herein.

72. Plaintiff asserts this Title VII and Sections 1981/1983 claim against Defendant Shelton State. Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendant Shelton State.

73. Plaintiff had a good faith belief that African American and female employees were being discriminated against.

74. Plaintiff identified and observed incidents of racial bias and discrimination at Shelton State.

75. Plaintiff opposed racial bias and discrimination and complained, engaging in protected activity.

76. After Plaintiff complained and engaged in protected activity, he suffered adverse actions including termination.

77. There is a causal connection between Plaintiff's protected activity and the adverse actions he has suffered.

78.    Defendant Shelton State retaliated against Plaintiff and terminated Plaintiff's employment on or about February 10, 2022.

79.    Defendant Shelton State's retaliation against Plaintiff for his complaints and protected activity have caused Plaintiff injury.

80.    Defendant Shelton State has a policy prohibiting retaliation; however, Defendant willfully violated its own policy and federal laws that prohibit retaliatory conduct in the workplace.

81.    As a proximate result of Defendant Shelton State's unlawful retaliation, Plaintiff has suffered mental anguish, financial loss, loss of career advancement, shame, humiliation, emotional distress, loss of enjoyment of life and other non-pecuniary and pecuniary losses.

82.    Plaintiff seeks declaratory and injunctive relief, and all legal and equitable relief available including back pay, benefits, front pay, reinstatement, interest, attorney's fees and costs, pecuniary and non-pecuniary compensatory damages for loss of career opportunities, humiliation, embarrassment, mental anguish, and any and all such other relief as the Court deems appropriate.

83.    Plaintiff requests this Court grant a permanent injunction enjoining Defendant Shelton State, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging further in retaliatory treatment; order

16

Defendant to institute and carry out policies, practices, and programs that provide protections to employees from retaliation, and which eradicate the efforts of past and present unlawful employment practices, including implementing a policy against race discrimination and retaliation; order Defendant to make Plaintiff whole by providing back pay, front pay, reinstatement, the position that he was denied, the pay, benefits and bonuses of the position he was denied, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory, punitive, and liquidated damages; award Plaintiff compensatory, punitive, and liquidated damages; award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and award such other and further relief this Court deems necessary and proper.

84.    Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

> a. Grant the Plaintiff a declaratory judgment holding that the actions of the Defendants described herein violated and continue to violate the rights of Plaintiff as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981 and 1983;
>
> b. Grant the Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in

concert with the Defendants and on Defendants' behalf from continuing to violate Title VII, as amended, as amended, 42 U.S.C. §§ 1981 and 1983;

c. Issue an injunction ordering Defendants not to engage in discrimination or retaliation and any other act which violated Title VII, as amended;

d. Grant the Plaintiff an order requiring Defendants to make Plaintiff whole by instating him to the position he would have occupied in the absence of the retaliation, backpay, interest, front pay, compensatory damages, and/or nominal damages, injunctive relief;

e. Grant the Plaintiff punitive and any other relief he is due based on those damages and equitable remedies due under Title VII, as amended, as amended, 42 U.S.C. §§ 1981 and 1983; and

f. Plaintiff further prays for such other relief and benefits as the cause of justice may require including, but not limited to, an award of costs, attorney's fees, expenses, and any other damages or equitable relief to which he is or may be entitled as proven in trial.

## COUNT TWO

**PLAINTIFF'S TITLE VII AND SECTION 1981/1983
RETALIATION CLAIMS
AGAINST DEFENDANT ACCS AND ACCS BOARD OF TRUSTEES**

18

85.   Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70), herein above as if fully set forth herein.

86.   Plaintiff asserts this Title VII and Sections 1981/1983 claim against Defendant ACCS and ACCS Board of Trustees. Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendant ACCS Board of Trustees.

87.   Plaintiff had a good faith belief that African American and female employees were being discriminated against.

88.   Plaintiff identified and observed incidents of racial bias and discrimination at Shelton State.

89.   Plaintiff opposed racial bias and discrimination and complained, engaging in protected activity.

90.   After Plaintiff complained and engaged in protected activity, he suffered adverse actions including termination.

91.   There is a causal connection between Plaintiff's protected activity and the adverse actions he has suffered.

92.   Defendants ACCS and ACCS Board of Trustees retaliated against Plaintiff and terminated Plaintiff's employment on or about February 10, 2022.

93. Defendant ACCS and ACCS Board of Trustee's retaliation against Plaintiff for his complaints and protected activity have caused Plaintiff injury.

94. Defendant ACCS and ACCS Board of Trustees has a policy prohibiting retaliation; however, Defendant willfully violated its own policy and federal laws that prohibit retaliatory conduct in the workplace.

95. As a proximate result of Defendant ACCS and ACCS Board of Trustee's unlawful retaliation, Plaintiff has suffered mental anguish, financial loss, loss of career advancement, shame, humiliation, emotional distress, loss of enjoyment of life and other non-pecuniary and pecuniary losses.

96. Plaintiff seeks declaratory and injunctive relief, and all legal and equitable relief available including back pay, benefits, front pay, reinstatement, interest, attorney's fees and costs, pecuniary and non-pecuniary compensatory damages for loss of career opportunities, humiliation, embarrassment, mental anguish, and any and all such other relief as the Court deems appropriate.

97. Plaintiff requests this Court grant a permanent injunction enjoining Defendant ACCS, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging further in retaliatory treatment; order Defendant to institute and carry out policies, practices, and programs that provide protections to employees from retaliation, and which eradicate the efforts of past and

present unlawful employment practices, including implementing a policy against race discrimination and retaliation; order Defendant to make Plaintiff whole by providing back pay, front pay, reinstatement, the position that he was denied, the pay, benefits and bonuses of the position he was denied, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory, punitive, and liquidated damages; award Plaintiff compensatory, punitive, and liquidated damages; award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and award such other and further relief this Court deems necessary and proper.

98.     Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

a. Grant the Plaintiff a declaratory judgment holding that the actions of the Defendants described herein violated and continue to violate the rights of Plaintiff as secured by Title VII, as amended as amended, 42 U.S.C. §§ 1981 and 1983;

b. Grant the Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with the Defendants and on Defendants' behalf from continuing to violate Title VII, as amended as amended, 42 U.S.C. §§ 1981 and

1983;

c. Issue an injunction ordering Defendants not to engage in discrimination or retaliation and any other act which violated Title VII;

d. Grant the Plaintiff an order requiring Defendants to make Plaintiff whole by instating him to the position he would have occupied in the absence of the retaliation, backpay, interest, front pay, compensatory damages, and/or nominal damages, injunctive relief;

e. Grant the Plaintiff punitive and any other relief he is due based on those damages and equitable remedies due under Title VII, as amended as amended, 42 U.S.C. §§ 1981 and 1983; and

f. Plaintiff further prays for such other relief and benefits as the cause of justice may require including, but not limited to, an award of costs, attorney's fees, expenses, and any other damages or equitable relief to which he is or may be entitled as proven in trial.

## COUNT THREE

### BREACH OF CONTRACT CLAIMS
### AGAINST DEFENDANTS ACCS, ACCS BOARD OF TRUSTEES AND SHELTON STATE

99.    Plaintiff hereby adopts and re-alleges paragraphs one (1) through twenty-four (24), and sixty (60) through seventy (70), herein above as if fully set forth herein.

100. Plaintiff asserts his breach of contract claim arising under the laws of the State of Alabama concerning contracts.

101. Plaintiff asserts this claim against Defendants ACCS and Shelton State.

102. ACCS, ACCS Board of Trustees and Shelton State entered into a valid Contract with Plaintiff through which Plaintiff was hired as the President of Shelton State.

103. Pursuant to this agreement, Plaintiff was to serve as the President of Shelton State from March 24, 2021, through March 24, 2023.

104. Plaintiff performed fully and competently under the Contract with ACCS, ACCS Board of Trustees and Shelton State.

105. Defendants ACCS, ACCS Board of Trustees and Shelton State breached their contractual agreements with Plaintiff and failed to abide by the lawful terms of the Contract.

106. Defendants ACCS, ACCS Board of Trustees and Shelton State violated terms and conditions of the Contract with Plaintiff and terminated Plaintiff's employment in violation of the Contract.

107. Defendants ACCS, ACCS Board of Trustees and Shelton State have provided no lawful excuse for failing to abide by the terms of the Contract with Plaintiff.

108.   Plaintiff has suffered economic damages through Defendants' failure to abide by the lawful terms of their Contract with Plaintiff.

109.   Defendants have breached the terms of the lawful Contract entered into with Plaintiff and Plaintiff seeks damages from Defendants, in an amount to be proved at trial.

## COUNT FOUR

### INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS EQUITABLE RELIEF CLAIMS AGAINST DEFENDANT JIMMY H. BAKER, CHANCELLOR

110. Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70), through with the same force and effect as if fully set out in specific detail herein below.

111.   Plaintiff asserts this Fourteenth Amendment claim pursuant to claim for equitable and injunctive relief against Defendant Jimmy H. Baker, Chancellor.

112.   ACCS, Shelton State and Plaintiff entered into a valid Contract through which Plaintiff was employed as the President of Shelton State.

113.   Pursuant to this agreement, Plaintiff was to serve as President from March 24, 2021, through March 24, 2023.

114.   At all times relevant to this Complaint, Defendant Chancellor Baker was aware of the terms of the Executive Officer Contract of Employment Agreement

entered into by ACCS, Shelton State and Plaintiff as Chancellor Baker signed the Agreement on behalf of the ACCS.

115.    Defendant Chancellor Baker terminated Plaintiff's employment on or about February 10, 20222, in violation of the Executive Officer Contract of Employment and interfered with the business relationship between ACCS, Shelton State and Plaintiff causing damage to Plaintiff.

116.    Plaintiff seeks all equitable relief permissible under the law of Alabama, including declaratory and injunctive relief, as well as costs and attorneys' fees.

## COUNT FIVE

### 42 U.S.C. §§ 1981 & 1983 CLAIMS AGAINST DEFENDANTS CHANCELLOR JIMMY H. BAKER IN HIS OFFICIAL CAPACITY ACCS AND ACCS BOARD OF TRUSTEES

117.    Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70), through with the same force and effect as if fully set out in specific detail herein below.

118.    Defendants Chancellor Jimmy H. Baker, ACCS and ACCS Board of Directors acted under color of state law to deprive Plaintiff to his rights by failing to exercise their authority to end racial discrimination at Shelton State and retaliation against Plaintiff.

119.    Shelton State is a college within and under the control of the Alabama Community College System.

120. Chancellor Jimmy H. Baker is the final authority and/or decisionmaker for many decisions or has such authority to cause the decisions made by others.

121. ACCS and the ACCS Board of Trustees is the governing body for the ACCS and is the final authority and decisionmaker for all decisions made by Chancellor Jimmy H. Baker and others.

122. The decision to terminate Plaintiff arose due to Plaintiff's complaints and protected activity opposing discrimination at Shelton State.

123. The decision to terminate Plaintiff is in violation of clearly established Constitutional and federal statutory law prohibiting retaliation for objecting to acts of discrimination.

124. Chancellor Jimmy H. Baker was aware of these clearly established laws and rights and willfully and intentionally violated Plaintiff's rights without regard for Plaintiff's federally protected rights.

125. ACCS and the ACCS Board of Trustees was aware of these clearly established laws and rights and willfully and intentionally violated Plaintiff's rights without regard for Plaintiff's federally protected rights.

126. As a direct and proximate result of the unreasonable and unlawful actions of Defendants ACCS, ACCS Board of Trustees and the Chancellor, Plaintiff has suffered and continues to suffer substantial past and future damages, both

compensatory and general including, but not limited to, loss of income, emotional distress, mental anguish, embarrassment, and humiliation.

127.   Defendants ACCS, ACCS Board of Trustees and the Chancellor are liable for the harms and losses sustained by Plaintiff.

128.   Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

a. Grant the Plaintiff a declaratory judgment holding that the actions of the Defendants described herein violated and continue to violate the rights of Plaintiff as secured by 42 U.S.C. §§ 1981 and 1983;

b. Grant the Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with the Defendants and on Defendants' behalf from continuing to violate 42 U.S.C. §§ 1981 and 1983;

c. Issue an injunction ordering Defendants not to engage in discrimination or retaliation and any other act which violate 42 U.S.C. §§ 1981 and 1983;

d. Grant the Plaintiff an order requiring Defendants to make Plaintiff whole by instating him to the position he would have occupied in the absence of the retaliation, backpay, interest, front pay, compensatory damages, and/or nominal damages, injunctive relief;

e. Grant the Plaintiff punitive and any other relief he is due based on those damages and equitable remedies due under 42 U.S.C. §§ 1981 and 1983; and

f. Plaintiff further prays for such other relief and benefits as the cause of justice may require including, but not limited to, an award of costs, attorney's fees, expenses, and any other damages or equitable relief to which he is or may be entitled as proven in trial.

## COUNT SIX

### 42 U.S.C. §§ 1981 & 1983 CLAIMS AGAINST DEFENDANT CHANCELLOR JIMMY H. BAKER IN HIS INDIVIDUAL CAPACITY

129. Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70), through with the same force and effect as if fully set out in specific detail herein below.

130. Plaintiff brings this action and asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 and the laws of the State of Alabama against Defendant Chancellor Jimmy H. Baker in his individual capacity as Chancellor of the ACCS.

131. At all times relevant hereto, Defendant Chancellor Jimmy H. Baker acted under color of state law.

132. Chancellor Jimmy H. Baker's actions, whether his own of by direction to others withing the community college system, deprived Plaintiff of his rights under the U.S. Constitution and under rights secured to him by federal statutory laws both of which prohibit retaliation against an employee who opposes prohibited discriminatory practices.

133. Chancellor Jimmy H. Baker violated Plaintiff's federally protected rights.

134. Plaintiff had a federal statutory and Constitutional right to be free of retaliation for objecting to and opposing discrimination.

135. Chancellor Jimmy H. Baker's actions in terminating Plaintiff deprived Plaintiff of his rights.

136. Chancellor Jimmy H. Baker was aware of these clearly established laws and rights and willfully and intentionally violated Plaintiff's rights without regard for Plaintiff's federally protected rights.

137. As a direct and proximate result of the unreasonable and unlawful actions of Defendant Chancellor Jimmy H. Baker, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general including, but not limited to, loss of income, emotional distress, mental anguish, embarrassment, and humiliation.

29

138.    Defendant Chancellor Jimmy H. Baker is liable for the harms and losses sustained by Plaintiff.

139.    Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

a. Grant the Plaintiff a declaratory judgment holding that the actions of the Defendant described herein violated and continue to violate the rights of Plaintiff as secured by 42 U.S.C. §§ 1981 and 1983;

b. Grant the Plaintiff a permanent injunction enjoining Defendant, his agents, successors, employees, attorneys, and those acting in concert with the Defendant and on Defendant's behalf from continuing to violate 42 U.S.C. §§ 1981 and 1983;

c. Issue an injunction ordering Defendant not to engage in discrimination or retaliation and any other act which violates 42 U.S.C. §§ 1981 and 1983;

d. Grant the Plaintiff an order requiring Defendant to make Plaintiff whole by instating him to the position he would have occupied in the absence of the retaliation, backpay, interest, front pay, compensatory damages, and/or nominal damages, injunctive relief;

e. Grant the Plaintiff punitive and any other relief he is due based on those damages and equitable remedies due under 42 U.S.C. §§ 1981

and 1983; and

f. Plaintiff further prays for such other relief and benefits as the cause of justice may require including, but not limited to, an award of costs, attorney's fees, expenses, and any other damages or equitable relief to which he is or may be entitled as proven in trial.

## COUNT SEVEN

### NEGLIGENT TRAINING, SUPERVISION AND RETENTION CLAIMS AGAINST ACCS, ACCS BOARD OF TRUSTEES AND SHELTON STATE

140. Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70), through with the same force and effect as if fully set out in specific detail herein below.

141. Plaintiff brings this action and asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 and the laws of the State of Alabama against Defendants ACCS, ACCS Board of Trustees and Shelton State.

142. The Defendants were charged with the management and operations of Shelton State.

143. The Defendants were responsible for implementing and enforcing EEO policies of Shelton State, ACCS Board of Trustees and ACCS including, but not limited to policies related to the prevention of discrimination and retaliation.

144. The Defendants had an affirmative duty to train employees regarding EEO policies to prevent discrimination, harassment and retaliation.

145. The Defendants had an affirmative duty to investigate complaints of discrimination, harassment and retaliation.

146. Defendants failed and/or refused to provide adequate training and supervision to their agents, staff, employees including Chancellor Baker, ACCS and the ACCS Board of Trustees.

147. The Defendants knew of should have known of the importance in obtaining and providing training and supervision to its employees, supervisors, managers and Chancellor and the risk associated with their failure to provide such training.

148. The Defendants' conduct was done with malice and reckless indifference to Plaintiff's federally protected rights and Defendants failed to make good faith efforts to comply with state and federal laws.

149. Defendants' failure to properly train and supervise employees, managers, supervisors and the Chancellor amounted to deliberate indifference to the federal and Constitutional rights of Plaintiff.

150. Defendants also retained employees, including the Chancellor, that had total disregard for Plaintiff's federal and Constitutional rights and Defendants knew

of should have known of the Chancellor's lack of regard for Plaintiff's rights and intent to violate said rights.

151. Reasonable public officials knew or should have known that their actions violated clearly established laws.

152. Plaintiff has suffered frustration, anxiety, humiliation, emotional distress, loss of income, loss of employment, loss of benefits as a result of Defendants' violation of Plaintiff's rights.

153. As a direct result of Defendants' actions Plaintiff has lost income, benefits, suffered emotional distress and other compensatory losses.

## COUNT EIGHT

### 42 U.S.C. § 1983 SUPERVISORY CLAIMS AGAINST DEFENDANT ACCS AND ACCS BOARD OF TRUSTEES

154. Plaintiff hereby adopts and re-alleges paragraphs one (1) through seventy (70), through with the same force and effect as if fully set out in specific detail herein below.

155. Defendant ACCS and ACCS Board of Directors acted under color of state law to deprive Plaintiff to his rights by failing to exercise their authority to end the racial discrimination and retaliation against Plaintiff.

156.   As supervisory officials, Defendant ACCS and ACCS Board of Trustees are liable for violating Plaintiff's constitutional and federally protected rights.

157.   There has been a pattern, history and habit of racial discrimination at Shelton State and retaliation by Chancellor Jimmy H. Baker and Defendant ACCS and ACCS Board of Trustees knew of should have known of the need to correct this discrimination and failed to do so.

158.   The practices, customs and policies of Defendant ACCS and ACCS Board of Trustees have resulted in deliberate indifference to the constitutional rights of Plaintiff.

159.   In addition, there are facts to support an inference that ACCS and ACCS Board of Trustees and Chancellor Baker directed others under their control to act unlawfully or knew or should have known that those under their control would act unlawfully and failed to stop these unlawful actions.

160.   Reasonable public officials knew or should have known that their actions violated clearly established laws.

161.   Plaintiff has suffered frustration, anxiety, humiliation, emotional distress, loss of income, loss of employment, loss of benefits as a result of Defendants' violation of Plaintiff's rights.

162.   As a direct result of Defendants' actions Plaintiff has lost income, benefits, suffered emotional distress and other compensatory losses.

## COUNT NINE

### PLAINTIFF'S DUE PROCESS CLAIMS AGAINST DEFENDANTS ACCS, ACCS BOARD OF TRUSTEES, SHELTON STATE AND CHANCELLOR JIMMY H. BAKER

163.   Plaintiff hereby adopts and re-alleges paragraphs one (1) through twenty-four (24) and sixty (60) through seventy (70), with the same force and effect as if fully set out in specific detail herein below.

164.   The Constitution of the State of Alabama guarantees that no person shall "be deprived of life, liberty, or property, except by due process of law." Ala. Const. of 1901, art. I, § 6 (1901). The Constitution of Alabama further guarantees "[t]hat all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law." Ala. Const. of 1901, art. I, § 13 (1901).

165.   As a public employee in the State of Alabama, Plaintiff has a protected property right in his employment per the terms of his Contract with ACCS and Shelton State.

166.   Plaintiff and Defendants entered into a Contract for Plaintiff's employment for a specified duration.

35

167.    Plaintiff's employment with Defendants was not "at will" and Plaintiff had an expectation of employment pursuant to the Contract.

168.    Plaintiff was competent in the performance of his job duties as President of Shelton State.

169.    Defendants failed to comply with the terms of the Contract and violated Plaintiff's clearly established statutory and constitutional rights by terminating Plaintiff's employment on February 10, 2022.

170.    Plaintiff has a property right in his employment, income and benefits, and he cannot be deprived of such rights without due process of law and just compensation therefor.

171.    Defendants have engaged in the unlawful violation of Plaintiff's due process rights.

172.    The Defendants have not provided Plaintiff with just, or any, compensation for the unjust and illegal taking of the above property and rights.

173.    As a proximate consequence of the violations of his constitutional rights by Defendants Plaintiff has suffered and will continue to suffer damage to his professional life and career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

174.     Plaintiff demands judgment against Defendants in their official capacities and seeks reinstatement and all such other relief as the jury and/or this Court may see fit to award.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

s/Cynthia Forman Wilkinson
CYNTHIA FORMAN WILKINSON
State Bar I.D. No.ASB-9950-L68C
Attorney for Plaintiff

**OF COUNSEL:**

**WILKINSON LAW FIRM**, **PC**
1717 A 3rd Avenue North, Suite A
Birmingham, Alabama 35203
Tel.: (205) 250-7866
Fax: (205) 250-7869
E-mail: wilkinsonefile@wilkinsonfirm.net

s/Bryan P. Winter
BRYAN P. WINTER
Counsel for Plaintiff

s/Ruth B. McFarland
RUTH B. McFARLAND
Counsel for Plaintiff

**OF COUNSEL:**

**WINTER MCFARLAND LLC**
3515 Watermelon Road
Northport, Alabama 35473
Telephone: (205) 650-1400
Facsimile: (205) 650-1401

## PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:

SHELTON STATE COMMUNITY COLLEGE, ALABAMA COMMUNITY COLLEGE SYSTEM, ALABAMA COMMUNITY COLLEGE SYSTEM'S BOARD OF TRUSTEES – GOVERNOR KAY IVEY, J.E.B. SHELL, JOHN ITCHELL, VALERIE GRAY, BRITTON LIGHTSEY, GOODRICH ROGERS, RON HOUSTON, LLEVELYN RHONE, TIM MCCARTNEY, AND DR. YEVETE RICHARDSON, AND JIMMY H. BAKER

135 SOUTH UNION STREET
MONTGOMERY, AL 36104


## PLAINTIFF'S ADDRESS:

Mr. Brad Newman
c/o Wilkinson Law Firm, PC
1717 3rd Avenue North, Suite A
Birmingham, AL 35203